UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 11-20772-PAS-SIMONTON

NAUTILUS INSURANCE COMPANY,

Plaintiff,

v.

DESIGN BUILD INTERAMERICAN, INC.,
PILAR PENA, individually and as Plenary Guardian
of Alberto Zambrana and as Guardian of Milena Zambrana,
MILEDAIS ZAMBRANA,
MANNY LEON, as employee of Design Build Interamerican, Inc.,
PEDRO RAMOS, as employee of Design Build Interamerican, Inc.,
SERGIO RUIZ, as employee of Design Build Interamerican, Inc.,
EASY FOODS, INC., and
THE ARCHITECTS GROUP, INC.

Defendants.

_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on the Parties' cross-motions for summary judgment. This is

an insurance policy coverage dispute arising out of Alberto Zambrana's injuries on April 4, 2008 at a

warehouse construction project. Plaintiff Nautilus Insurance Company ("Nautilus") issued a general

commercial liability policy to Defendant Design Build Interamerican, Inc. ("DBI"), a design and

construction services company. The Nautilus policy generally covers DBI's obligations arising out of

bodily injury to the general public not involved with the construction project. Subject to certain

exceptions, the policy also provides coverage to DBI's officers and employees, including DBI's

president Manny Leon ("Leon"), his partner Pedro Ramos ("Ramos"), and former superintendent and

DBI employee Sergio Ruiz ("Ruiz").[1]

_____

[1] DBI, together with Leon, Ramos, and Ruiz, are the "DBI Defendants."

Zambrana was injured at a construction site that Defendant Easy Foods, Inc. ("Easy Foods") leased and operated.[2] Easy Foods contracted with DBI to manage and supervise the construction project. Easy Foods also agreed, by separate contract, that Defendant The Architects Group, Inc. ("Architects") would develop plans for the construction site. As general contractor for the construction project, DBI subcontracted a portion of the work to Royal Plumbing, Corp. ("Royal Plumbing"), a non-party to this case.

On July 7, 2010, Zambrana's wife and his daughter, Defendants Pilar Pena and Miledais Zambrana (the "Zambrana Defendants"), filed suit in Florida state court. The suit seeks damages against DBI and DBI's employees Leon, Ruiz, and Ramos as well as Royal Plumbing, Easy Foods, and others for negligence and gross negligence in connection with Zambrana's injury (the "underlying action").

Nautilus filed the instant action on March 3, 2011, seeking a declaratory judgment to foreclose any obligation to defend or indemnify each of the named Defendants. Specifically, Nautilus' Amended Complaint seeks a declaration that: (1) the Nautilus policy does not cover damages arising from Zambrana's injuries; (2) the Nautilus policy does not provide coverage or a duty to defend the derivative claims of Zambrana's family; and (3) the Nautilus policy does not provide Easy Foods or Architects with coverage or a defense of any claim based on Zambrana's injuries.

Nautilus relies on the Nautilus policy's course of employment exclusion, Endorsement L205, which provides that the policy does not apply to the bodily injury of an "employee" of DBI arising out

---

[2] Although Easy Foods is still listed as a defendant in this action, the Parties stated on the record that Nautilus and Easy Foods have resolved their dispute and that Nautilus will therefore not pursue its claims against Easy Foods. *See* Order Following September 5, 2012 Hearing [DE-130]. Accordingly, the Court will not address the issue regarding Easy Foods' rights under the Nautilus policy that Easy Foods raised in response to Nautilus's motion.

of and in the course of that person's employment with DBI or while that person was performing duties related to the conduct of DBI's business. In response, the DBI Defendants, joined by Architects and the Zambrana Defendants, argue (1) that an issue of fact exists regarding whether Zambrana was an employee of Royal Plumbing at the time of his accident, and thus whether he was an "employee" of DBI for purposes of the policy's course of employment exclusion; and (2) that the policy's "Separation of Insureds" provision precludes the application of the course of employment exclusion to Leon, Ramos, and Ruiz when the damages in the underlying action arise from the injury of a co-employee, and thus that claims arising from Zambrana's injuries are not excluded from coverage.

The Court has considered counsels' argument and has reviewed the record, Nautilus's motion for summary judgment [DE-88], the relevant responses [DE-94, 101, 104] and replies [DE-110, 113, 114], as well the DBI Defendants and Architects' motion for summary judgment [DE-82] and the Zambrana Defendants' motion for summary judgment [DE-84], along with the relevant responses [DE-97, 98] and replies [DE-109]. Taking all of the evidence in the light most favorable to the non-prevailing parties, the Court concludes as a matter of law that Zambrana was an "employee" of DBI pursuant to the course of employment exclusion, and that the Separation of Insureds clause does not provide an exception to the exclusion to DBI's officers and employees. Therefore, because the exclusion applies to each of the insured parties, the Nautilus policy does not provide coverage for claims arising from Zambrana's injury to any of the named Defendants. Accordingly, summary judgment shall be entered in favor of Nautilus as discussed below, and the Defendants' motions are denied.

## I.    Undisputed Material Facts

Nautilus is a Florida authorized surplus insurance carrier. Plaintiff's Concise Statements of Material Facts ("Pl.'s SOF"), ¶ 14 [DE-87 at 3; 87-5]. DBI purchased a Commercial General Liability

("CGL") insurance policy from Nautilus bearing policy number NC 676613. Pl's SOF, ¶ 15 [DE-87 at 3; 34-2] ("Nautilus policy"), Declarations Page.

In September 2006, Easy Foods entered into an agreement with DBI to carry out the expansion of a warehouse leased by Easy Foods.  Pl's SOF, ¶ 3; Affidavit of Easy Foods' President Gonzalo Armendariz ("Armendariz Aff."), ¶ 5 [DE 87-1]; Deposition of Manny Leon ("Leon Dep.") [DE 87-2], at pp. 11-12. Pursuant to this agreement, DBI was the construction manager and general contractor for the Construction Site, and was generally responsible for administering, supervising, and completing the construction project. *See generally*, Armendariz Aff., Ex. A, at Art. 2.  As part of the project, DBI subcontracted a portion of the  work to Royal Plumbing; Pl.'s SOF, ¶ 5; Leon Dep., at p. 25.

On April 4, 2008, as the construction project was underway, Zambrana fell through a drop ceiling after delivering and assisting with the installation of a steel pipe at the construction site. Deposition of Jose Alberto Bogantes ("Bogantes Dep.") [DE 100-1],at pp. 36-37; 47-48.  Jose Alberto Bogantes, a Royal Plumbing employee who was present at the construction site on the date of the injury, testified that he and Jose Bonne, another Royal Plumbing employee, helped Zambrana unload the pipe, at which time Bogantes asked Zambrana to assist Bonne with the installation of the pipe in the upper level of the construction site. *Id.*, at p. 43.  According to Bogantes, the pipe which Zambrana delivered was to be installed in the boiler. *Id.*, at pp. 39-40.  Bogantes also testified that  Zambrana had delivered plumbing materials to the DBI construction site on other occasions  prior to the date of his injury. *Id.*, at p. 34.  DBI's president Manny Leon also testified that  Zambrana delivered the pipe in connection with DBI's work for Easy Foods at the construction site.  Leon Dep., pp. 16-17.

A.    **The Underlying Complaint**

The Zambrana Defendants' underlying complaint alleges that Zambrana was at the construction

site delivering steel pipe, which he was allegedly directed to take to an upper level location on a mechanical lift. *Id.*, ¶ 15. As he exited the lift, Zambrana stepped on an unsupported drop ceiling, falling 20 feet to a concrete floor and suffering critical injuries. *Id.*, ¶ 16. Count I of the underlying complaint is a claim of negligence/gross negligence against DBI, Ruiz, Leon, and Ramos; Count II is a claim of negligence/gross negligence against Royal Plumbing employees Joel Gonzalez, Samuel Gonzalez, Jose Castelnaux, and Alberto Bogante;[3] Count III is a claim of negligence/gross negligence against Easy Foods; Count IV is a claim of negligence/gross negligence against ECU Foods, LLC, the owner/lessor of the premises at which the construction site was located; and Count V is a claim of negligence/gross negligence against Architects.[4] Easy Foods filed cross-claims against DBI in the underlying action for contract indemnification and common law indemnification [DE 94-2, pp. 6-10].

B.    **The Nautilus Policy**

The Nautilus policy generally covers "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which the insurance applies." Nautilus policy, Section I.1.a. As is often the case with CGL policies, the Nautilus policy also contains several provisions limiting and excluding coverage. The most important of these exclusions for purposes of the motions for summary judgment pertains to the insured's liability for the bodily injury of an employee, addressed in Endorsement L205 to the Nautilus policy:

---

[3] Royal Plumbing was dismissed from the underlying action. *See* Pl.'s SOF, ¶ 13; Zambrana Defs.' Resp. to Pl.'s SOF, ¶ 13 [DE 102].

[4] Nautilus is defending DBI, Leon, Ramos, and Ruiz in the underlying action under a strict reservation of rights under the policy. Pl.'s SOF, ¶ 18.

**EXCLUSION – INJURY TO EMPLOYEES, CONTRACTORS, VOLUNTEERS
AND WORKERS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.      Exclusion **e. Employer's Liability** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced** by the following:

This insurance does not apply to:

e.      **Employer's Liability**

"Bodily injury" to:

(1)      An "employee" of any insured arising out of and in the course of:

(a)      Employment by any insured; or
(b)      Performing duties related to the conduct of any insured's business; or

(2)      The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

(1)      Whether any insured may be liable as an employer or in any other capacity; and

(2)      To any obligation to share damages with or repay someone else who must pay damage because of the injury.

....

C.      For the purpose of this endorsement, the definition of "Employee" in the **Definitions** Section is **replaced** by the following:

"Employee" is any person or persons who provide services directly or indirectly to any insured, regardless of where the services are performed or where the "bodily injury" occurs, including, but not limited to a "leased worker", a "temporary worker", a "volunteer worker", a statutory employee, a casual worker, a seasonal worker, a contractor, a subcontractor, an independent contractor, and any person or persons hired by, loaned to, or contracted by any insured or any insured's contractor, subcontractor, or independent contractor. This definition of "employee" will not modify the provisions of **Section II – Who Is An Insured**.

*Id.*, Endorsement L205.

In addition to DBI, the Nautilus policy includes DBI's executive officers, directors, and

6

stockholders in the definition of "insureds." Nautilus policy, Section II.1.d. DBI's employees (other

than "executive officers") are insureds "only for acts within the scope of their employment" by DBI

or "while performing duties related to the conduct" of DBI's business. *Id.*, Section II.2.a. However,

employees and volunteer employees are not "insureds" for

> (1) "Bodily injury"...:
>
>> (a)    To [DBI],...to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of [DBI's] business, or to [DBI's] other "volunteer workers" while performing duties related to the conduct of [DBI's] business;
>
> ....

*Id.*, Section II.2.a.(1)(a).

Lastly, the Nautilus policy includes a separation of insureds provision, which provides:

> **7.    Separation of Insureds**
>
> Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the Named Insured, this insurance applies:
>
> **a.** As if each Named Insured were the only Named Insured; and
>
> **b.** Separately to each insured against whom claim is made or "suit" is brought.

Nautilus policy, Section IV.7.

## II.    Summary Judgment Standard

Summary judgment is appropriate when "the pleadings . . . show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Once the moving party demonstrates

the absence of a genuine issue of material fact, the non-moving party must "come forward with

'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith

Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting* Fed. R. Civ. P. 56(e)). The Court must view the

record and all factual inferences therefrom in the light most favorable to the non-moving party and

decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

In opposing a proper motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252.

## III.    Legal Analysis

A court which sits in diversity jurisdiction must apply the substantive law of the forum state. *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1515 (11th Cir. 1997). Here, the insurance contract was issued in Florida to a Florida company and the parties do not dispute that Florida law controls. Therefore, the interpretation of the policy is governed by Florida law.

An insurance policy must be read as a whole for a determination of coverage. *Auto-Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla. 2000). In Florida, the interpretation of an insurance contract is a question of law to be determined by the court. *See Graber v. Clarendon Nat'l Ins. Co.*, 819 So.2d 840, 842 (Fla. 4th DCA 2002). It is well-settled that insurance contracts are to be construed in accordance with the plain language of the policy, with any ambiguity interpreted liberally in favor of the insured and strictly against the insurer. *Anderson*, 756 So. 2d at 34. Policy language is considered ambiguous if the language is susceptible to more than one reasonable interpretation. *Id.* "Where the language in an insurance policy is clear and unambiguous, however,

8

the court must give effect to such language." *Valiant Ins. Co. v. Evanosky*, 864 F.Supp. 1189, 1192 (M.D. Fla. 1994).

The burden is on the insured to establish that an insurance policy covers a claim against it. *East Florida Hauling, Inc. v. Lexington Ins. Co.*, 913 So.2d 673, 678 (Fla. 3d DCA 2005). Once the insured shows coverage, the burden shifts to the insurer to establish that an exclusion applies. *Id.* If an exception to the exclusion applies, then the burden shifts back to the insured to establish that the exception applies. *Id.* The insurer must make it precisely clear what is excluded from coverage. *Westmoreland v. Lumbermens Mut. Cas. Co.*, 704 So. 2d 176, 179 (Fla. 4th DCA 1997). If the insurer fails to do this and the exclusion could be read as both providing and excluding coverage, then the exclusionary clause must be construed in favor of coverage. *Id.* "If the insurer makes clear that it has excluded a particular coverage, however, the court is obliged to enforce the contract as written." *Id.*

A.      **No Coverage for DBI, Leon, Ramos, and Ruiz.**

1.      **Zambrana Falls Within the Definition of an "employee" of DBI Pursuant to the Course of Employment Exclusion.**

The DBI and Zambrana Defendants argue that summary judgment in Nautilus's favor is improper because there is an issue of material fact regarding whether Zambrana was employed by Royal Plumbing or by One Stop Plumbing Supply, Inc., a plumbing supply company, at the time of the injury.[5] DBI Defs.' Resp. to Pl.'s Mot. [DE-104], at p. 2-3. They contend that this distinction is dispositive of the issue of whether Zambrana was a "statutory employee" for purposes of Florida's

_____

[5] Both One Stop and Royal Plumbing are owned by Joel Gonzalez and operated out of the same location. Bogantes Dep., p. 36. In addition, both companies are listed as joint insureds for purposes of their worker's compensation insurance policy with State Farm Fire and Casualty Company. *See* Audit Summary [DE 118-2, p.7]. State Farm has paid indemnity and medical benefits to Zambrana pursuant to this policy. *See* Notice of Lien [DE 34-6].

worker's compensation immunity statute – and thus an "employee" for purposes of the course of employment exclusion – or merely a "materialman" to whom Defendants contend the course of employment exclusion does not apply. *Id.*[6]

Based on a review of the record in the most favorable light to the Defendants, the issue of whether Zambrana was a statutory employee is immaterial to determining whether Zambrana is an "employee" of DBI under Endorsement L205.[7] Endorsement L205 expressly provides that an "employee" for purposes of the exclusion "includes, *but is not limited to*," leased, casual, temporary, seasonal, volunteer, statutory employees, and other types of workers. In other words, the clear and unambiguous terms of the employee definition do not require Zambrana to be DBI's statutory employee in order to qualify as an "employee" for purposes of the endorsement. The endorsement requires only that he "provide services directly or indirectly" to DBI. Based on the testimony of Bogantes and Leon, Zambrana assisted with the installation of the pipe at DBI's construction site as part of the Easy Foods construction project on the date of his injury. As such, Zambrana clearly provided a service to DBI and was an "employee" for purposes of the exclusion.

Having determined that Zambrana was an "employee" for purposes of Endorsement L205, the Court turns to the question of whether his injury falls within the scope of the exclusion. The exclusion in the Nautilus policy applies to bodily injury "to an employee of any insured arising out of and in the course of (a) Employment by any insured; or (b) Performing duties related to the

---

[6] Defendants cite *Adams Homes of Northwest Florida, Inc. v. Cranfill*, 7 So. 3d 611 (Fla. 5th DCA 2009) for the proposition that a "materialman" is not a statutory employee for purposes of Florida's workers' compensation immunity statute. Here, the Court is interpreting the term "employee" in Endorsement L205, which clearly includes, but is not limited to, statutory employees.

[7] An issue is "material" if it is a legal element of the claim under applicable substantive law that may affect the resolution of the action. *Anderson*, 477 U.S., 248.

conduct of any insured's business."

The Florida Supreme Court has held that in the context of CGL policies such as the Nautilus policy the term "arising out of" should be read broadly and requires only "some causal connection, some relationship." *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So.2d 528, 539–40 (Fla. 2005). The undisputed evidence establishes that on the date of his injury Zambrana was delivering and assisting with the installation of plumbing equipment as part of the Easy Foods construction project. In fact, according to Bogantes, Zambrana remained on the roof holding the pipe in place for at least an hour and a half while the installation was completed. Bogantes Dep., at pp. 44-45. Based on the undisputed evidence, the Court concludes that Zambrana was clearly performing duties related to the conduct of DBI's business on the day of his fall. Accordingly, Zambrana's injuries fall within the scope of the exclusion in the Nautilus policy.

**2.     The Separation of Insureds Clause Does Not Provide an Exception to the Course of Employment Exclusion.**

The DBI and Zambrana Defendants contend that the course of employment exclusion is inapplicable as to coverage to DBI's employees Leon, Ramos, and Ruiz under the Policy's "Separation of Insureds" provision, which provides that the Nautilus policy applies "[s]eparately to each insured against whom claim is made or 'suit' is brought." Zambrana Defs.' Resp. To Pl.'s Mot. [DE-101], at p. 7. The Defendants argue that in order to give full effect to the separation of insureds clause, as the Court is required to do, the exclusion provision must be limited to instances in which "the insured claiming coverage is being sued by one of its employees." *Id.* In other words, the exclusion does not apply when an employee (*i.e.*, Zambrana) is suing his co-employees (*i.e.*, Leon, Ramos, and Ruiz). *Id.*

In Florida, a separation of insureds clause operates to create separate insurable interests in

11

each insured. *Mactown, Inc. v. Cont'l Ins. Co.*, 716 So.2d 289 (Fla. 3d DCA 1998). Thus, the Court

must separately determine Nautilus's obligations with respect to Leon, Ruiz, and Ramos, who are

also insureds. The course of employment exclusion in the Nautilus policy states that the exclusion

applies "[w]hether *any insured* may be liable as an employer *or in any other capacity.*" Endorsement

L220, § A.e.(1) (emphasis supplied). Under Florida law, a course of employment exclusion

including language that an insured may be liable "as an employer, or in any other capacity,"

encompasses claims against an insured employee even when that employee is not the employer of

the injured party. *Aetna Commercial Ins. Co. v. American Sign Co.*, 687 So.2d 834, 836 (Fla. 2d

DCA 1996). Leon and Ramos are insureds under the Section II of the Nautilus policy as officers

of DBI, and Ruiz is an insured because he was an employee of DBI and the claims against him in

the underlying action involve acts "within the scope" of his employment at DBI.[8] Therefore, even

with the full benefit of the severability clause, the exclusion applies to Leon, Ramos, and Ruiz

because they may be liable in the underlying action in their capacity as employees of DBI. *See*

*Mercury Ins. Co. of Florida v. Charlie's Tree Service, Inc.*, 29 So.3d 375, 377 (Fla. 4th DCA 2010)

(holding that a course of employment exclusion applied in a lawsuit against an insured employee

even though the insured employer was not a party to the lawsuit because the exclusion applied to any

insured who may be liable "as an employer or in any other capacity").[9]

*Premier Ins. Co. v. Adams*, which the Zambrana Defendants cite in their response, involved

---

[8] Leon, DBI's president, testified that he was present at the construction site on the date
of Zambrana's injury as project manager (Leon Dep., pp. 15-16; 34), that Ruiz was the
superintendent responsible for installing the drop ceiling through which Zambrana fell (*id.*, at p.
23) and that Ramos was Leon's partner at DBI (*id.*, at pp. 33-34).

[9] Notably, none of the Florida cases upon which Defendants rely involve a course of
employment provision including language barring coverage to an insured in its capacity as an
"employer or in any other capacity", as is the case here.

a homeowners' insurance policy provision that excluded coverage for bodily injury or damage that was "expected or intended by any insured." 632 So.2d 1054, 1055 (Fla. 5th DCA 1994). Here, the exclusionary clause does not relate to intentional conduct, as in *Premier Insurance*, nor does it invalidate the policy's severability clause. Rather, the exclusionary clause emphasizes that the Nautilus policy does not cover claims arising from injuries to DBI's employees, and that this exclusion extends to *any insured* who "may be liable" as an employer "or in any other capacity." Moreover, unlike *Premier*, the Zambrana Defendants are not alleging separate, not-excluded acts of negligence against DBI and its employees in the underlying action. Even with the full benefit of the severability clause, therefore, the exclusion applies to Leon, Ruiz, and Ramos' potential liability for Zambrana's injuries, such that they are not entitled to coverage. *See generally Medical Staffing Network, Inc. v. New Hampshire*, 2001 WL 1147447, *3 (S.D. Fla., June 15, 2001) (holding that auto liability exclusion applied to both the employer and the employees because the employer in the underlying action "was not alleged to have done anything more or different than its employee.").[10]

In summary, Zambrana was an "employee" of DBI pursuant to the clear and unambiguous terms of Endorsement L205 to the Nautilus policy at the time of the injury at issue in the underlying action. The course of employment exclusion provision applies because on the date of his injury Zambrana was "[p]erforming duties related to the conduct of [DBI's] business" – namely, delivering

---

[10] This result is consistent with the bedrock principle of Florida law that course of employment exclusions, such as the one at issue in this case

> [A]re inserted in business policies for the benefit of the employer. An employer is required to protect its employees pursuant to the Workers' Compensation Statute.... The employer then protects the general public by purchasing a liability insurance policy. Because employees are already protected by workers' compensation, the insurance policy bought to protect the general public generally specifically excludes coverage for injuries covered by workers' compensation. The insurance policy premium would necessarily be higher were this not so.

*Mercury Ins. Co. of Fla.*, 29 So. 3d at 377.

and assisting in the installation of pipe to the construction site in connection with DBI's construction project. Moreover, the exclusion applies with equal force to Leon, Ruiz, and Ramos in their capacity as officers and employees of DBI.   Accordingly, Zambrana's injury clearly falls within the scope the policy's course of employment exclusion.[11]

## B.    No Duty to Defend

An  insurer's duty to defend is broader than the duty to indemnify.  *Lime Tree Vill. Cmty. Club Ass'n, Inc. v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405 (11th Cir.1993).  Whether an insurer has a duty to defend its insured "is determined solely by the claimant's complaint if suit has been filed." *Higgins v. State Farm Fire and Casualty Co.*, 894 So.2d 5, 9–10 (Fla. 2004). It is well settled that the insurer's duty to defend against a legal action is, triggered "when the complaint alleges facts that fairly and potentially bring the suit within policy coverage." *Jones v. Florida Ins. Guar. Ass'n, Inc.*, 908 So.2d 435, 442–43 (Fla. 2005). "Furthermore, the insurer must defend even if the allegations in the complaint are factually incorrect or meritless." *Id.*  In fact, "when the actual facts are inconsistent with the allegations in the complaint, the allegations in the complaint control in determining the insurer's duty to defend." *Id.*, at 443.  "Any doubts regarding the duty to defend must be resolved in favor of the insured." *Id.*

However, the duty to defend does not continue indefinitely.  Rather, an insurer must defend a claim only until it is certain that the claim is not covered by the policy at issue.  *Nationwide Mut. Fire Ins. Co. v. Keen*, 658 So.2d 1101, 1102–03 (Fla. 4th DCA 1995).  Thus, whether Nautilus has a continuing duty to defend the DBI Defendants in the underlying action depends on whether

---

[11] Because the Nautilus policy provides no coverage to any insured for Zambrana's injury, it also does not apply to the Zambrana Defendant's claims against Architects, who are neither named insureds nor come within any definition of "insureds" in the policy.

Nautilus has a duty to indemnify the DBI Defendants against loss for the claimed injuries. As discussed above, because there is no coverage under the policy for liability arising from the allegations in the underlying complaint, and thus no duty to indemnify, there is also no continuing duty to defend the claims against DBI and its employees.[12]

## IV.   Conclusion

In the Amended Complaint for Declaratory Judgment, Nautilus sought judgment declaring its obligations to Defendants DBI, Pilar Pena, Miledais Zambrana, Manny Leon, Pedro Ramos, Sergio Ruiz, and the Architects Group, Inc. under the policy at issue here, specifically its continuing obligation to defend the Defendants in the underlying lawsuit and its obligation to indemnify the Defendants against loss for the injuries sustained by Alberto Zambrana on April 4, 2008.  For the foregoing reasons, Nautilus does not have a duty to indemnify Defendants in the underlying lawsuit, and therefore has no continuing duty to defend the Defendants in the underlying lawsuit. Accordingly, it is

ORDERED THAT

(1)    Plaintiff's Motion for Summary Judgment [DE-88] is GRANTED.

(2)    The Motion for Summary Judgment of Defendants Design Build Interamerican, Inc., The Architects Group, Inc., Pedro Ramos, Manny Leon, and Sergio Ruiz [DE-82] is DENIED.

(3)    Defendant Pilar Pena and Miledais Zambrana's Motion for Summary Judgment [DE-84] is DENIED.

---

[12] The Nautilus policy also contains a provision limiting Nautilus's duty to defend its insureds against "any 'suit' seeking damages for 'bodily injury' or 'property damage' to which the insurance policy does not apply." *Id.* Section I.1.a., page 9 of 15.  Thus, because the insurance policy does not apply to claims arising from Mr. Zambrana's injury, Nautilus does not have a duty to defend these claims.

(4)     A final judgment will be entered concurrently.

(5)     All other pending motions are DENIED as MOOT.

(6)     This case is CLOSED.

DONE and ORDERED in Miami, Florida, this ⟋⟋ day of September, 2012.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:
All Counsel of Record

16